774 A.2d 507 (2001)
340 N.J. Super. 192
STATE of New Jersey, Plaintiff-Respondent,
v.
Todd C. JORN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted April 4, 2001.
Decided April 24, 2001.
*508 Peter M. O'Mara, Red Bank, attorney for appellant (Mr. O'Mara on the brief).
John Kaye, Monmouth County Prosecutor, attorney for respondent (Mark P. Stalford, Assistant Prosecutor, of counsel and on the brief).
Before Judges KEEFE, STEINBERG and WEISSBARD.
The opinion of the court was delivered by WEISSBARD, J.A.D.
Defendant, Todd C. Jorn appeals from his conviction, after trial de novo in the Law Division, of driving while intoxicated (D.W.I.) in violation of N.J.S.A. 39:4-50. The facts brought out at the Municipal Court trial revealed the following insofar as they are pertinent to the single issue raised on this appeal.
At approximately 11:26 p.m. on March 17, 1998, Officer Weber of the Middletown Township Police Department observed defendant's vehicle traveling south on Navesink Avenue at a high rate of speed. A radar test showed a speed of 64 miles per hour, in a 40 miles per hour zone. Officer Weber also saw defendant's vehicle pass two other cars traveling in the same direction by crossing over the center double yellow line in a no-passing zone. At that point, the officer effectuated a stop of defendant's vehicle. After obtaining his license, registration and insurance information, the officer noted that defendant's eyes appeared watery and glassy and that his face appeared flushed. He also smelled a strong odor of alcohol on defendant's breath. As defendant presented his *509 documents, the officer noted that his hand movements were slow and he fumbled with the papers. In response to the officer's inquiry as to whether defendant had been drinking, defendant replied that he had two beers on a boat. As a result, the officer then proceeded to administer a number of tests in order to determine if defendant was intoxicated. A description of those tests is not necessary for the purposes of this appeal. Upon completion of the tests, Weber arrested defendant for driving while intoxicated and transported him to headquarters where defendant was processed, was read the implied consent law and agreed to submit to a breathalyzer exam.
Officer Weber is a certified breathalyzer operator and at trial described in detail his preparation of the breathalyzer and his administration of the test to defendant. At 12:47 a.m., defendant's breathalyzer reading showed a blood alcohol content of.17 percent, while a second test performed eight minutes later resulted in an identical reading.
After the breathalyzer tests were conducted, Officer Weber had defendant perform additional psychophysical tests on videotape. It was Officer Weber's opinion, based on his experience, that defendant was intoxicated and therefore unfit to drive his vehicle. In an interview conducted at approximately 1:00 a.m., defendant stated that he had "two ales" on a boat and another one or two at a party, apparently some time earlier that evening.
Defendant received summonses for driving while intoxicated, speeding, crossing the double yellow line, and reckless driving. The municipal judge found him guilty on all charges and imposed sentences on all except the reckless driving which was merged into the driving while intoxicated. Defendant appealed only his conviction for driving while intoxicated, for which the Law Division judge reimposed the same penalty as the municipal court judge; a fine of $501, thirty dollars costs, $100 D.W.I. surcharge, fifty dollar V.C.C.B. penalty, seventy-five dollar S.N.S.F.A., two year loss of license, thirty days community service and attendance at the Intoxicated Driver Resource Center. The sentence was based on defendant being a second time D.W.I. offender.
On appeal, defendant contends that his conviction for D.W.I. must be reversed because the alcohol influence report (AIR) utilized by Officer Weber did not contain a sequential file number, in violation of N.J.S.A. 39:4-50.3.
We reject this contention and affirm defendant's conviction.
The statute in question reads in full as follows:
Chemical analyses of the arrested person's breath, to be considered valid under the provision of this act, shall have been performed according to methods approved by the Attorney General, and by a person certified for this purpose by the Attorney General. The Attorney General is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, and to make certifications of such individuals, which certifications shall be subject to termination or revocation at the discretion of the Attorney General. The Attorney General shall prescribe a uniform form for reports of such chemical analysis of breath to be used by law enforcement officers and others acting in accordance with the provisions of this act. Such forms shall be sequentially numbered. Each chief of police, in the case of forms distributed to law enforcement officers and others in his municipality, or the other officer, board, or official having charge or control of the *510 police department where there is no chief, and the Director of the Division of Motor Vehicles and the Superintendent of State Police, in the case of such forms distributed to law enforcement officers and other personnel in their divisions, shall be responsible for the furnishing and proper disposition of such uniform forms. (Emphasis added).
There appears to be no dispute that the forms utilized in this case were not sequentially numbered. As Officer Weber testified, the forms were kept in a desk drawer in the D.W.I. processing room where they are readily accessible to the officer during a defendant's processing. Essentially, defendant contends that the use of the word "shall" in the statute renders the requirement of sequentially numbered forms mandatory, and, as a result, a failure to so number the forms requires suppression of the evidence. Advancing this argument, defendant correctly asserts that drunk driving prosecutions are in the nature of criminal proceedings, State v. Ryan, 133 N.J.Super. 1, 334 A.2d 402 (Cty. Ct.1975), and that penal statutes must be strictly construed against the State. State v. Churchdale Leasing Inc., 115 N.J. 83, 557 A.2d 277 (1989). In that regard, he also argues that all doubts as to the meaning of a penal statute should be resolved in favor of the defendant. State v. Blackman, 125 N.J.Super. 125, 128-29, 309 A.2d 8 (App.Div.1973). Those propositions of law are fundamental and well accepted. The State, in response, notes that while the word "shall" is generally construed to be mandatory and the word "may" permissive or directory, "the terms have been held to be interchangeable when necessary to implement legislative intent." No Illegal Points, Citizens For Driver's Rights, Inc. v. Florio, 264 N.J.Super. 318, 329, 624 A.2d 981 (App.Div.), certif. denied, 134 N.J. 479, 634 A.2d 526 (1993). "The significant consideration is whether the provision in question relates to the essence of the law or merely to the form and manner in which it is to be carried out. If no public benefit ensues and no private right is insured by according the word `shall' an imperative meaning, it is to be construed as directory rather than mandatory." Franklin Estates v. Township of Edison, 142 N.J.Super. 179, 184, 361 A.2d 53 (App. Div.1976) aff'd, 73 N.J. 462, 375 A.2d 658 (1977).
While the statute's requirement for sequential numbering is certainly not superfluous, we must attempt to discern the legislative intent and whether defendant's argument for suppression would further that goal. Defendant suggests that the requirement was placed in the statute to eliminate the possibility of police tampering with the AIR forms and to ensure that a defendant would have access to the original form completed by the testing officer. He asserts that "a defendant should be insured that they are not convicted on the basis of non-original documents." There is some force to defendant's argument, but the question remains nevertheless whether a failure to comply with the statute requires suppression of the breathalyzer evidence. This very issue was discussed in State v. Hudes, 128 N.J.Super. 589, 321 A.2d 275 (Cty.Ct.1974). In Hudes, in response to the very same argument made here, Judge Petrella held that "the omission of the forms being sequentially numbered does not appear to deny defendant a fair and impartial test nor deny him access to any materials, and further, no allegation has been made that a failure to sequentially number the forms render the form inaccurate, cause the machine to malfunction, or affected the recording of the breathalyzer reading by the operating officer." Id. at 604, 321 A.2d 275. We fully agree with the result reached in Hudes. We see this provision concerning sequential numbering as one that does not relate to "the essence of the law" but "merely relates to the form and *511 manner in which it is to be carried out." No Illegal Points, supra. A defendant remains free, in an appropriate case, to question the integrity of the AIR form and our decision here should not be construed as undermining that right. In this case, however, there is not the slightest hint that Officer Weber engaged in any improper conduct in the performance of the test or in recording its results.
Defendant's reliance on State v. Nicastro, 218 N.J.Super. 231, 527 A.2d 492 (Law Div.1986), is misplaced. The holding in Nicastro was specifically called into question in State v. Ettore, 228 N.J.Super. 25, 548 A.2d 1134 (App.Div.1988), certif. denied, 114 N.J. 473, 555 A.2d 600 (1989), a decision which also cited Hudes with approval. Accordingly, we find that the failure to have sequentially numbered forms, at least in the context of this case, does not require a suppression of the breathalyzer results.
Affirmed.